STATE EX REL. RUSSEL, ET AL., *v.* TOOKER, COUNTY CLERK AND RECORDER OF LEWIS AND CLARKE COUNTY.

[Submitted October 17, 1896. Decided October 22, 1896.]

ELECTIONS—*Nomination by petition.*—A list of persons cannot be placed upon the official ballot as candidates of a so-called Silver Republican party upon a petition filed with the county clerk nominating such persons for their respective offices as candidates of such party. (*State ex rel. Woody* v. *Rotwitt, ante,* 502, cited.)

SAME—*Nomination by certificate of a committee.*—The nomination of a list of persons as candidates of a so-called Silver Republican party by a certificate filed with the county clerk purporting to certify their nomination as by the central committee

of the Silver Republican party is ineffectual where no convention held by such party had ever delegated this power to a committee. (*State ex rel. Pigott* v. *Benton*, 13 Mont. 306, cited.)

SAME—*Nomination by members of a political club.*—A certificate purporting upon its face to be that of a county convention of the Silver Republican party and nominating a county ticket composed of Republicans, Silver Republicans, Democrats and Populists, is insufficient to authorize the placing of their names upon the official ballot, where it appeared that the nominations were in fact made at a meeting of some fifty members of a Silver Republican club having four hundred members ; that the officers signing the certificates were the presiding officer and secretary of the club ; that no primaries were ever held ; no call for a convention ever made ; nor any person ever elected as a delegate to a convention, or notice given that a convention was to be held,—since such proceedings were not those of an organized assemblage of delegates representing a political party within the meaning of section 1310 of the Political Code.

EQUITY—*Prayer for judgment.*—The judgment in an equity case is not controlled by the prayer for relief. (*Davis* v. *Davis*, 9 Mont. 268 ; *Kleinschmidt* v. *Steele*, 15 Mont. 188, cited.)

ORIGINAL PROCEEDING.    Application for an injunction. Writ granted.

*E. D. Weed* and *O. T. Crane*, for Relators.

*T. C. Bach, E. C. Boom* and *J. W. Kinsley*, for Respondent.

DE WITT, J.—This action is brought in this court to restrain the county clerk and recorder of Lewis and Clarke county from printing on the official ballot, to be voted at the next election, the names of certain persons as candidates for the Silver Republican party, which names were certified to the county clerk as of persons having been nominated as candidates of that party by methods which relator asserts are illegal.

Objections are made by respondent's counsel to the form of this action.    It is argued by relator, however, that the action is properly brought under the authority of *Chumasero* v. *Potts*, 2 Mont. 242 ; *Territory ex rel. Tanner* v. *Potts*, 3 Mont. 364, and other later decisions of this court.    If the action is not properly brought, and upon investigation we should be obliged to so hold, the result would be that a new proceeding must be commenced in order to obtain a judgment on the merits.    The same remarks apply to five other election ballot cases which are now (October 22d) before us and the hearing of which has occupied us all of the last four days.

These are cases of great public interest. Counsel inform us that the ballots must be published to-morrow and that there is barely time to print them. For these reasons we shall approve the form of the actions, *pro forma*, but shall not consider this decision as to this matter of practice binding in the future if the question shall be at any time fully argued and we have time to deliberately consider it. Public policy and public interest demand an immediate decision of this case on the merits and justify us in thus passing the question of practice.

It was attempted to get the names of a certain list of persons upon the official ballot of Lewis and Clarke county by three different methods.

First : A petition was filed with the respondent clerk and recorder nominating these persons for their respective offices as candidates of the Silver Republican party. The nominations could not be made by this method, and the procedure did not entitle these persons to be placed upon the official ticket as candidates of the Silver Republican party. (*State ex rel. Woody* v. *Rotwitt, ante,* p. 502.

Second : A certificate was filed nominating these same persons, and purporting to certify their nomination as by the county central committee of the Silver Republican party. But no convention of the Silver Republican party had ever delegated this power to a committee. (*State ex rel. Pigott* v. *Benton,* 13 Mont. 306.) This committee, therefore, had no power delegated to them from the convention of their party. There was some attempt to show that this committee derived this power by delegation from the chairman of the state central committee of the Silver Republican party to the member of that committee in and for the county of Lewis and Clarke, and from that member to the county central committee of the Silver Republican party. Testimony was taken by us upon disputed questions of fact, and among other things the chairman of the state committee testified that he did not delegate to the member of Lewis and Clarke county the power to nominate a county ticket, nor did he consider that he had power to delegate such authority in local affairs.

This disposes of the alleged nomination by petition and by the central committee. They are each wholly invalid.

Third : A certificate was filed nominating these same persons, purporting upon its face to be that of a county convention of the Silver Republican party. Upon this alleged certificate respondent's counsel relies. The question then remains for decision whether the alleged county convention, purporting to nominate these persons, was in fact a convention of the Silver Republican party of the county of Lewis and Clarke. Upon this question evidence was taken.

We think that the only question before us is whether these persons are entitled to go upon the ballot as party nominees, that is, as candidates of the Silver Republican party. (*State ex rel. Woody* v. *Rotwitt, ante,* p. 502.) The question of their going upon the ballot as independents or as non-party candidates we do not think is before us. Every fact in the pleadings and evidence contradicts any suggestion that any one pretended that these persons were independents or non-party candidates. There is not a syllable in the testimony to indicate that the persons endeavoring to make these nominations ever intended to attempt to place their candidates upon the ballot as independents.

The questions then remain : Did a party convention nominate these people ? Section 1310 of the Political Code is as follows :

"Any convention or primary meeting held for the purpose of making nominations to public office, or the number of electors required in this chapter, may nominate candidates for public office to be filled by election in the state. A convention or primary meeting within the meaning of this chapter is an organized assemblage of electors or delegates representing a political party or principle."

We are of opinion that the only reasonable view of the evidence is that these alleged candidates were nominated simply by a political club in the city of Helena, county of Lewis and Clarke, called "the Republican Silver Club." We have before us the minutes of the club, and the evidence of persons and

members who were present at the proceedings. It is perfectly apparent that the club in acting was not a convention representing the Silver Republican party, nor indeed did those persons participating in the proceedings consider themselves a convention. There is not a minute of a convention. The minutes are all of the Silver Republican club. To be sure, witnesses on the stand make statements that the Silver Republican club of Helena and the Silver Republican party were one and the same thing ; but we look beyond bare statements and forms of speech, and endeavor to arrive at the real substance of the proceedings. We find that the officers acted as officers of the club, and did not pretend to be officers of a convention. No primaries were ever held. No call for a convention was ever made, nor was any person ever elected as a delegate to a convention, and no notice was given that a convention was to be held. It is in evidence that a daily newspaper in Helena published as news items the proceedings and intentions of this club ; but these were simply narrations by a newspaper reporter and published as news. To pretend that such news items were notices of a convention, seems to us to reach the point of absurdity. It is claimed that a banner was strung across the street which gave notice ; but the banner was an ordinary political one giving the name of the club and stating that it met every Wednesday evening. It is a very violent stretch of imagination to pretend to call this a notice of a convention. To construe the proceedings of this club as a convention is contrary to all ideas of political conventions among the American people. The Silver Republican party, it was stated in the evidence, was a wing of the Republican party. If it were a wing it naturally inherited the political practices of the republican party. No one pretends that the Republican party had any such usages or customs, or ever held conventions in any such manner as this. Upon this question the evidence of the presiding officer of the club, Mr. Reece, is interesting. It was he who signed as chairman the certificate of nomination. After his signature appear these words, "chairman and presiding officer of said convention or organized assemblage of electors of the Silver

Republican party ; business : land attorney ; business address :
Helena, Montana.'' The signature was shown to the witness
and he testified that he did not know what he signed ; that
Mr. Kinsley asked him to sign it ; that he did so hurriedly as
he was leaving his office. This question was asked : ''Had
you any idea that evening during the whole process of the
meeting that it was anything else than a meeting of the Silver
Republican Club?'' Answer : ''My understanding was that
it was a meeting of the Silver Republican club.'' Question :
''When did you first know that it was called a convention?''
Answer : ''After the certificate was filed.'' He stated
further that he did not believe he was presiding over a con
vention, and that he did not know that any was called. In
reply to a question by one of the justices, he said : ''I did
understand that it was a certificate ; that these persons were
the nominees of the Silver Republicans, but I did not under-
stand that I presided over a Silver Republican convention.''
This testimony, let it be remembered, was that of the presid-
ing officer of the club and the officer who signed the certificate
of nomination filed with the county clerk. And we are asked
to call this sort of a proceeding a party county convention!
We decline to do so. No matter with what force some of the
members of the club assert that the club and the party were
the same thing, still when we reach the real substance of the
whole proceedings it seems to us wholly absurd to contend
that this proceeding was a convention.

Furthermore, it appears that the Silver Republican club has
some 400 members. These proceedings were participated in
by 30 to 50 members. It is claimed that this was the action
of a political party. We have evidence before us of what the
Silver Republican party is claimed to be, and what are a so-
called Silver Republican's political principles. These principles
are stated by witnesses to be simply that a Silver Republican is
one who has been a Republican and who endorses the whole of
the national Republican platform of 1896, except the financial
plank ; and as to the financial question, his position is the
advocacy of the free and unlimited coinage of silver at the

ratio of 16 to 1 by the United States, independent of any other
nation.   Such is the evidence before us, and such, for the
purposes of this case, must be considered the fact.   We do
not pretend to deny the right of a political party in conven-
tion assembled to nominate a ticket composed of members of
its own party, and also those of other parties, but we think
natural presumption from history is that as a rule political
conventions nominate candidates from the ranks of their own
party.   But the alleged convention in this case nominated a
ticket composed of Republicans, Silver Republicans, Democrats
and Populists.   A very large majority of this ticket, that is to
say, a majority of 16 to 8, was of men other than Silver
Republicans, and of men already in nomination upon the
Republican, Democratic and Populist county tickets.   We are
of opinion, therefore, that this is additional evidence tending to
show that the assembly which nominated the persons in question
was not a convention of the Silver Republican party.   Let it be
remembered that we do not question the right of a convention
to make such nominations if they please ; but when the ques-
tion in controversy is whether or not an assemblage was a
convention, the fact that it has done that which is wholly con-
trary to the history of political conventions is some evidence
against the claims of the assemblage to be a convention.   For
when it nominates a vast majority of its candidates from
among the ranks of its enemies, it is doing that which is at
least extraordinary as convention action.

The respondent's counsel earnestly argue that any number
of men however small, may organize a political party.   This
will not be denied at this time or place.   But that is not the
question for consideration.   The question here is whether or
not a political party held a convention.   We have stated above
our reasons for holding that the evidence shows that this was
not a convention under the statute, or under the usages or
customs of political parties.

It must be remembered that this is an action in equity and
that this court is sitting as an equity court.   It is our duty to
arrive at the real substance of things.   These cases must each

stand upon their own facts—a doctrine to which we gave particular emphasis in *Stackpole* v. *Hallahan*, 16 Mont. 40. Regarding the real facts of this case as they have been presented to us by the pleadings and by the evidence, we cannot in any equity or good conscience, concede that the assemblage which nominated these persons was in any sense a county convention of the Silver Republican party. It seems to have been sought by the respondent to show by the evidence which the counsel introduced that the alleged convention under consideration was a parallel to the state convention, which convention representing all the electors of the state, deliberately and formally divided itself into two conventions, which two conventions each then proceeded to nominate presidential electors and a congressman. The facts in regard to the state convention were introduced in evidence. But without discussing them at any length at this time we will leave them with the remark that the facts in regard to the state convention are very widely distinguished from the proceedings of the assemblage which nominated these persons under consideration.

The judgment in equity cases is not controlled by the prayer for relief. (*Davis* v. *Davis*, 9 Mont. p. 268 ; *Kleinschmidt* v. *Steele*, 15 Mont. 188.)

We are of opinion that the facts shown entitle the plaintiff to an injunction restraining the county clerk and recorder from placing upon the official ballot, as candidates of the silver republican party, all those persons named in the pretended certificate of nomination, signed by F. L. Reece as chairman, and W. J. McHaffie as secretary ; and also such persons as pretended to be nominated by petition of electors and by certificate of the Silver Republican party central committee, that is to say, all those persons who were named in said three certificates, copies of which are annexed to relator's complaint as exhibits.

Let the writ of injunction therefore be made perpetual to the foregoing effect.

                                            *Writ Granted.*

PEMBERTON, C. J., and HUNT, J., concur.