STATE EX REL. WHEELER ET AL. v. STEWART, SECRE-
TARY OF STATE, RESPONDENT; JOHNSON, INTERVENER.

(No. 5,627.)

(Submitted October 11, 1924. Decided October 14, 1924.)

[230 Pac. 366.]

*Mandamus — Elections — Nomination of Independent Candi-
dates—Statutes—Presidential Electors—Public Officers—Use
of Term "Independent" not Exclusive.*

Elections—Nomination of Presidential Electors—Independent Candidates
—Method of Nomination.
    1. *Held,* that section 673, Revised Codes of 1921, referring to
party candidates for president and vice-president, does not provide
for an exclusive method of nominating presidential electors, so as
to exclude their nomination as independents.

Same—Independent Candidates—Nomination—Statute Applicable.
    2. *Held,* that section 615, Revised Codes of 1921, providing that
candidates for public office may be nominated otherwise than by
convention or primary meeting, to-wit, by petition, is applicable
to the nomination of independent candidates.

Same—Presidential Electors—Public Officers.
    3. A candidate for presidential elector is a candidate for public
office within the meaning of section 615, *supra,* and may therefore
be nominated independently.

Same—Party Adopting Name "Independent"—Another Party may Use
Same Term in Name.
    4. *Held,* that assuming (but not deciding) that an existing political
party may use the term "Independent" in its party name, such use
cannot deprive another candidate from employing that term in des-
ignating the character of his candidacy for the same office, and that
the provision of section 639, Revised Codes, prohibiting an inde-
pendent candidate from using any word of the name of an existing
political party has no application in such circumstances. (See
special concurring opinion of MR. JUSTICE HOLLOWAY.)

Original application for writ of mandate by the State, on
the relation of B. K. Wheeler and others, against Charles T.
Stewart, Secretary of State, in which John M. Johnson inter-
vened. Writ issued.

---

    1. Nomination of presidential electors, see note in 43 L. R. A.
(n. s.) 287.
    2. Provisions of election law regulating independent nominations,
see note in 41 L. R. A. (n. s.) 140.

*Mr. W. L. Pope* and *Mr. James W. Baldwin*, for Relators, submitted a brief and argued the cause orally.

*Mr. Timothy B. Nolan*, for Intervener, submitted a brief and argued the cause orally.

*Mr. E. G. Toomey*, for Respondent, submitted a brief and argued the cause orally.

HONORABLE O. F. GODDARD, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

Relators seek a writ of mandate to compel Charles T. Stewart, as secretary of state, to place their names as independent candidates for presidential elector upon the official ballot to be voted at the general election to be held on November 4, 1924. These persons claim they have been nominated by petitions under the provisions of section 615, Revised Codes of 1921. They assert they do not represent any recognized party but are pledged to vote and if elected will vote for Robert M. La Follette for President and B. K. Wheeler for Vice-President of the United States, and they say they are the only independent candidates for the office of presidential elector in the state of Montana.

No question is raised as to the sufficiency and form of the petitions, nor as to the number of signatures appended thereto. Upon the filing of the petition this court issued an alternative writ of mandate which was made returnable October 11, 1924. The respondent appeared by a motion to quash. At the hearing John M. Johnson, claiming to be duly nominated, qualified and acting candidate of the Farmer-Labor party for presidential elector, asked permission to intervene in the action by filing a petition and praying for an injunction enjoining the respondent from certifying to the county clerks of the several counties of the state the names of the La Follette-Wheeler electors. His motion to intervene was granted, where-

upon relators and respondents severally filed answers to John-
son's petition, and after extensive argument the matter was
submitted to the court for decision.

It is urged, first, by respondent and intervener that section
[1]  673, Revised Codes of 1921, provides an exclusive method
of nominating presidential electors in this state.   This position
is not tenable for the reason that section 673 refers to party
candidates for President and Vice-President only.   That this
is so is disclosed by the title as well as the body of the bill
which was adopted by the people as an initiated measure at
the general election in 1912 (Laws 1913, p. 590) ; and it has
been so declared by this court in *State ex rel. Mills* v. *Stewart,*
64 Mont. 453, 210 Pac. 465.

It is next contended that section 615, Revised Codes of 1921,
[2]  does not permit the nomination of independent candi-
dates for presidential electors.   The section provides: ''Candi-
dates for public office may be nominated otherwise than by
convention or primary meeting in the manner following'': and
then follow the procedural requirements for a certificate of
nomination by petition.   This section was first enacted in 1889
(Laws 1889, p. 136, sec. 5), and has been re-enacted twice
since in identical form.   In *State ex rel. Woody* v. *Rotwitt,*
18 Mont. 502, 46 Pac. 370, this court treated this ''section of
the Code as contemplating simply the candidacy of one not a
nominee of a party—an independent or electors' candidate.''
That it is applicable to the nomination of independent candi-
dates for public office is not debatable.

We are not disposed to treat as serious any argument to the
[3]  effect that a citizen may not run independently for the
office of President of the United States.   If he may do so, a
necessary corollary is that there must be presidential electors
representing his candidacy.   There was much said at the hear-
ing to the effect that a candidate for presidential elector is not
a candidate for public office.   In this connection *State ex rel.
Spofford* v. *Gifford,* 22 Idaho, 613, 126 Pac. 1060, and the case
of *Spreckles* v. *Graham,* 194 Cal. 516, 228 Pac. 1040, recently

decided by the supreme court of California, were much relied upon by respondent and the intervener. We do not regard these cases as particularly helpful to us by reason of the wide dissimilarity of the statutes of those states and our own, but there cannot be any question that one who is a candidate for presidential elector is a candidate for public office in this state. In *State ex rel. Richardson* v. *Stewart,* 58 Mont. 707, 198 Pac. 1118, this court recognized, without discussing the question, that candidates for presidential and vice-presidential electors are public officers. By the provisions of section 10775, Revised Codes of 1921, the term " 'public office' shall apply to any national, state, county, or city office to which a salary attaches and which is filled by the voters, as well as to the office of presidential elector, United States senator, or presiding officer of either branch of the legislature." This section is *in pari materia* with other election statutes.

It is worthy of note that in *Spreckles* v. *Graham, supra,* the supreme court of California does not deny, but rather inclines to the view, that a presidential elector is a public officer. Whatever may be the rule in other states, under the statutes of Montana there is no doubt that such candidates are candidates for public office and that they may be nominated independently under the provisions of section 615, *supra.*

But it is urged that the candidacy of these persons is [4] inhibited by the provisions of section 639, Revised Codes 1921, which provides, in part: "No independent or nonpartisan candidate shall be permitted to use any word of the name of any existing political party or organization in his candidacy."

It appears from the proof that on the twenty-second day of September, 1924, certain petitions for the nomination of the La Follette-Wheeler electors were filed with the secretary of state. In these the signers sought to nominate the persons named therein as "candidates for said offices under the designation La Follette-Wheeler Independent." On the 25th of September, 1924, before a sufficient number of petitions to

nominate were filed with the secretary of state, there was filed in the office of the secretary a certificate of nomination by ''The Independent Party of Montana,'' nominating Sam W. Teagarden as a candidate for United States senator. It is contended that, as the Teagarden nomination was that of an existing political party containing the word ''Independent,'' the proponents of the candidacy of La Follette and Wheeler may not make use of that word in the name ''La Follette-Wheeler Independent.'' This position is not tenable. It is unnecessary to discuss this subject at length.

The statute expressly permits the nomination of independent candidates. The use of the word as there employed is generic. Assuming, but not deciding, that those who compose ''The Independent Party of Montana'' have the right to use the word ''Independent'' in their party name, still they may not prohibit independent candidates from using the name ''Independent.'' Where the statute in so many words recognizes the right of electors to file as independent candidates, it is not reasonable to hold that by employing the words ''no independent candidate shall be permitted to use any word of the name of any existing political party or organization in his candidacy,'' the legislature intended to prohibit an independent candidate from using the very word which designates the character of his candidacy.

Consequently it is clear that relators are entitled to the relief sought. Respondent's motion to quash is overruled and the relief sought by the intervener is denied. Let the writ issue forthwith as prayed for. It is ordered that this opinion be filed *nunc pro tunc* as of October 14, 1924.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE RANKIN concur.

MR. JUSTICE HOLLOWAY: I concur fully in the conclusion that the La Follette-Wheeler candidates for presiden-

tial elector are entitled to have their names printed on the official ballot as independent candidates. I agree, also, with most everything said in the foregoing opinion; but in my judgment undue emphasis is laid upon the definition of "public office" contained in section 10775, Revised Codes. That section is a part of the Corrupt Practices Act, and it does not follow as a matter of course that the definition given in that Act is controlling when applied to the general election laws. At most, it is only persuasive.

From the admission of Montana as a state in 1889 down to the adoption of the Direct Primary Law in 1912, the only means of nominating candidates for public office were those prescribed by what are now sections 612 and 615, Revised Codes, *viz.*, by a convention or primary meeting of an organized political party or by petition of qualified electors, and neither a political party nor electors could secure the name of a candidate to be printed on the official ballot except he be a candidate for *public office* (sec. 619, Rev. Codes); so that, if a presidential elector were not a public officer, there was not any means known to the law by which a candidate for presidential elector could secure his name to be printed on the official ballot, prior to the presidential election in 1916; but no one would have the temerity to argue that such was the state of the law and that the secretary of state could have refused successfully to certify the names of regularly nominated candidates for presidential elector at every quadrennial election beginning in 1892 and including 1912, for during that entire period, by a uniform construction of existing statutes by the executive department of our state government, presidential electors were included under the designation "public officers," and the names of candidates for such office were regularly certified to the several counties and printed on the official ballot, in virtue of what is now section 619, Revised Codes, and in that construction of the law all other departments of state government, and the people of the state as a whole, acquiesced. While the construction of a statute by another department of

state government is not conclusive upon the courts, it is entitled to the most respectful consideration and will be departed from only for cogent reasons, upon the theory, recognized by the authorities generally, that acquiescence by the legislature and judicial tribunals is the best evidence that the contemporaneous construction rightly explains the meaning of the Act. (*O'Donnell* v. *Glenn,* 9 Mont. 452, 8 L. R. A. 629, 23 Pac. 1018; 25 R. C. L. 1042; 2 Lewis' Sutherland on Statutory Construction, sec. 472.)

The long-continued, uniform construction of existing laws, supplemented by the definition contained in section 10775, establishes to my satisfaction that the office of presidential elector is a public office within the meaning of sections 612 and 615, Revised Codes.

I do not think it is sufficient to say that the word "independent" is generic, hence it may be used as a part of a party name and also as the designation of the candidacy of one who seeks public office independently of any organized party support.

It is conceded that prior to the time the La Follette-Wheeler candidates for presidential elector were nominated by petition, an existing political party under the name "The Independent Party of Montana" had regularly nominated Sam W. Teagarden as its candidate for United States senator. Now, if that party could rightfully appropriate the term "independent" as a part of its name or designation, it would seem to follow necessarily that no other political party and no individual could use the word "independent" in its or his candidacy, for the language of section 639 is not uncertain in meaning. That section declares: "Every political party and its regularly nominated candidates, members, and officers, shall have the sole and exclusive right to the use of the party name and the whole thereof. * * * No independent or nonpartisan candidate shall be permitted to use *any word* of the name of any existing political party or organization in his candidacy."

Prior to the adoption of the Australian Ballot System, the territory of Montana did not concern itself with the nomination of candidates for public office, or with the printing or distribution of ballots to be used at an election. These matters were confided exclusively to organized political parties or to individuals who sought the suffrage of the people. But with the enactment of the Australian Ballot Law in 1889 (Laws 1889, p. 135) provision was made for the nomination of candidates, the registration of certificates of nomination, the certification of nominations, and the printing and distribution of ballots at public expense and under regulations prescribed by law. With slight amendments not material here, the provisions of the Act of 1889 have been carried forward and are in full force and effect to-day. Section 2 of that Act (now section 612, Revised Codes of 1921) made provision for nominations by an organized political party, while section 5 (now section 615) provided for the nomination of independent candidates by petition of electors. Sections 4 and 5 (now sections 614 and 615, Revised Codes) required certificates of nomination to be filed with the proper officer—secretary of state or county clerk—and section 9 (now section 619, Revised Codes) required the secretary of the territory (now secretary of state) to certify to the several county clerks "the name and *description* of each person nominated for such office as specified in the certificates of nomination filed with the secretary of the territory." From March, 1889, continuously to the present time, the statutes have recognized the right of any elector to seek public office as an independent candidate and to have his candidacy so designated. And there never has been any uncertainty as to the meaning of the term "independent" when so employed. It always has meant, and now means, "one who acts independently of any organized party." (Century Dictionary.)

In view of this history of our election laws, it seems to me to follow necessarily that since an elector without party support is authorized to seek public office as an independent can-

didate and to have his candidacy designated by the only term which will describe it, he cannot be denied the right by any attempted appropriation of the term "Independent" by an organized political party; in other words, the recognition of the right of the individual to use the term "Independent" to describe a candidacy free from party support or control, by necessary implication prohibits the use of that term by an organized political party as a part of its name or designation; or again, stating the same thing differently, the effect of the statute has been to set aside the term "Independent" for the exclusive use and benefit of independent candidates, thereby denying to organized political parties the right to use it as a part of a party name or designation. To say that an organized party may use the term "Independent" as a part of its name, and that independent candidates may also use the same term to describe their candidacies, is to defeat the very purpose of section 639, which is to prevent the voters becoming confused and misled by the same term appearing in the captions of the parallel columns of the official ballot.

It is my opinion that independent candidates as such are entitled to the exclusive use of the term "Independent" as a candidacy designation.

MR. JUSTICE STARK: I concur in what is said by MR. JUSTICE HOLLOWAY.