STATE EX REL. METCALF, v. JOHNSON, COUNTY CLERK OF SILVER BOW COUNTY.

[Submitted.October 20, 1896. Decided October 22, 1896.]

ELECTIONS—*Conventions—Validity of Nominations.*—The nomination of a county ticket and presidential electors by a so-called Citizens Silver party convention is a nullity where the convention was participated in by twenty-one electors of the county who appeared in response to personal invitation and after acting as a county convention then proceeded to hold a state convention, it appearing that no call for a state convention was ever given or delegates elected to either convention, or notice published throughout the state or county of the gathering of the new party. (*State ex rel. Woody,* v. *Rotwitt, ante,* page 502.' affirmed.)

SAME—*Convention defined.*—A political convention is an organized assemblage of electors or delegates representing a political party or principle. Convention representation implies a gathering of electors springing from the electors who compose a political party or adhere to a political principle. (Affirmed.)

ORIGINAL PROCEEDING.    Petition for an injunction.    Writ made permanent.

*Thompson Campbell,* for Relator.

*L. J. Hamilton, F. T. McBride* and *J. F. Forbis,* for Respondent.

HUNT, J.—The petitioner asks for an injunction to restrain the county clerk of Silver Bow county from printing upon the official ballot for that county the nominees of the Citizens Silver party as they appear by the certificates on file with the county clerk of Silver Bow county. Answer was filed and testimony heard by this court.

The facts in evidence before us are these : On October 1st, 1896, at 8 o'clock p. m., there assembled at the council chamber of the city hall, at Butte, a gathering of twenty or thirty persons, electors of Silver Bow county, Montana. These persons met in response to invitations extended by Mr. J. A. Baker and several others. The exact circumstances under which they came together were detailed by Mr. Baker as follows :

Question.    Do you know whether there was any call made for this meeting ?

Answer. The manner in which this call was made was from hand to hand and from mouth to mouth.

Q. By whom ?

A. By the electors of Silver Bow county.

Q. When was this call given ?

A. Several days before the meeting; two days, perhaps three.

Q. Don't you know ?

A. I do not know.

Q. You participated ?

A. I did. I invited people perhaps three or four days before the meeting was called ; I invited gentlemen whom I knew to be in sympathy with the principles of the financial plank of the party.

Q. Were any notices given to any other counties, or electors of any other counties to come in and participate ?

A. No, sir.

Q. You did not ?

A. No, sir.

Q. Do you know whether anybody else gave any notice ?

A. No, sir ; I do not know.

Q. Don't you know that they did not ?

A. Well, I can't say.

Q. Was there any notice published in the papers ?

A. No, sir.

Q. Now when you did assemble, how did you determine as to who had a right in the meeting ?

A. The gentlemen who did assemble were supposed to be gentlemen who were invited to the meeting and were electors of that party.

When thus assembled Mr. Wm. Thompson was elected as temporary chairman and Mr. J. A. Baker temporary secretary. These gentlemen were made permanent officers. Then the gathering appointed several committees and thereafter at once organized itself into a political party to be known as the Citizens Silver party—‘‘the beginning,’’ testified the secretary, ‘‘of a new national party.’’ Directly after this important

epoch in the history of this new national organization, and without pursuing the common ceremony of a call for a convention it proceeded as a "county convention" to consider the report of a committee recommending nominations for candidates for district court judges and county officers of Silver Bow county. The report of the committee recommending certain names was adopted and a complete ticket nominated forthwith by acclamation. The county ticket so nominated was identical with the Republican county ticket, or "Auditorium ticket," and which we are not asked to disturb.

No resolutions or platform were adopted, "it appearing," the minutes recite, "to the convention from statements made in the convention that a state convention of the Citizens Silver party had been called to meet on October 1st, 1896, at the council chamber, city hall, Butte, at eight o'clock p. m. of that day and that the electors and delegates to that convention were ready to meet upon the adjournment of the county convention, and that the said state convention would probably adopt resolutions setting forth the principles of the party, it was therefore the sense of the convention that the county convention should not adopt any resolutions as a county convention, but would be bound by such resolutions as the state convention should adopt as a declaration of its principles."

The "county convention" then adjourned *sine die.*

Then at once followed a "state convention of the Citizens Silver party."

Mr. McMillan was chairman, Mr. Baker, secretary. The same gentlemen who composed the county convention made up the so-called state convention, that is to say, the persons composing the county convention simply assumed to act in a different capacity. Only one roll of delegates was kept for both conventions. It showed twenty-one names of persons as present. The body nominated Hon. Martin Maginnis, Henry L. Frank and Daniel Brown, Esqs., as presidential electors and voted to leave the balance of the State ticket blank. Resolutions favoring free coinage of silver by the United States independently of any other nation were adopted and the "state convention" adjourned.

No call for a state convention was ever given; no delegates to the state convention were ever elected by any county convention; no credentials were ever given to any such delegates by any one; no notice throughout the state or any county in it was attempted to be published by way of notice of a state gathering of this new party; and no delegates other than the twenty-one persons already referred to participated. The whole history of the party covered one short evening. It originated one minute, convened as a county convention the next, convened as a state convention the next, then promulgated its principles and adjourned. We doubt if political history records the undertaking of another so vast a work as this in so brief a time.

But now that the facts are subjected to the severe test of impartial judicial investigation, we find them wholly insufficient to sustain the action of the assemblage either in attempting to nominate county or state officials, and we are satisfied by all the evidence that the real object of the nomination of the Citizens Silver ticket was to place the Republican nominees beneath the Democratic electoral ticket. Let us grant that a new national party was organized. Yet even so, how can a few individuals coming from but one-fourth of the voting precincts of one county, without any notice to the electors of the state, organize a state convention representing such an organized party and its principles?

The very underlying principle of convention organization is in *representation*. This principle pervades every political system in our form of popular government. It was recognized in May 1787, when the federal system was revised by the Philadelphia convention of delegates from the states at the outset of the government; and has steadily grown to be a common form of giving expression to the choice of the people by whom delegates are usually chosen. As political parties have grown and become the medium of declarations of principles of electors, so the convention system has become a common part of political machinery as the means of putting candidates before the people. National party conventions have nominated presidential candi-

dates since 1832.    Somewhat recently, in the growth of elect-oral reform, legislation has come to recognize the existence of political party conventions, and the statutes of many states, including those of Montana, have briefly put in definite form the rule that a convention is an organized assemblage of elect-ors or delegates representing a political party or principle. This definition cannot be separated into wholly independent divisible parts.    The assemblage must not only be an organized one, but the electors as well must, when so organized, represent a political party or principle.   Thus a convention must be a rep-resentative body.    Now, if we are right in this reasoning, this representation is of electors of the party to whom the candi-dates of the convention are to be submitted for election to office. And this representation must be what the statute implies:    A gathering of electors springing from the electors who compose a political party or adhere to a political principle.    If such electors fail or decline to send delegates to the convention, or if the delegates sent disagree or act unwisely, then other matters may arise; but there can be no representation without the presence of electors fairly representing the party, or with-out some opportunity having been given to the electors to say whether or not they desire their party or principle to be rep-resented.    This was the doctrine of the Woody case, *ante* p. 502, and is now reaffirmed.    Here, in this case, we find an attempted state convention of an organized party, made up of a few persons, without credentials, voluntarily coming from but nine precincts of one county in a great state and no attempt at giving to the electors of the party in other precincts or counties a chance to participate in the assemblage!    The whole theory of representation as fairly intended by the law was entirely ignored.    The vigorous authority of the electors of the party was lacking, and unless relief is granted in such cases, the voters of the state who are members of an existing political party, may be confronted with a ballot containing the names of persons in whose nomination they had no opportunity whatever to take part by delegate represen-tation.    We cannot assent to such a method as a convention nomination of candidates.

A political convention is to a certain extent a law unto itself and the right to assemble in convention is one that must always be upheld, but whether there has been a convention with authority to nominate candidates is, under conditions of fact, one that must be determined by applying the statute law of the state. The duty of the court, therefore, in this case is to subject the methods employed to form a convention to such examination as any other case properly presented to a court would be. We have done so and our conclusion is that there was no state convention held and the writ must issue as prayed for.

These views apply to the so-called "county convention." The electors of the new party in Siver Bow county had no fair notice of any convention and no opportunity to be represented by delegates, and were not represented except by a few projectors of the new party. The action of the body, therefore, as a county convention cannot be sustained and it must be nullified.

All questions of practice are passed. (*State ex rel. Russell* v. *Tooker, ante,* p. 540.) Let the writ of injunction issued enjoining the county clerk from putting the so-called citizens silver ticket upon the official ballot be made permanent.

As it appears to the court that the secretary of state has certified the Citizens Silver party electoral ticket to all of the county clerks throughout the state, the attorney general is hereby directed to notify each and every clerk of this decision and to order them to omit the said ticket from the official ballots of their respective counties.

*Writ Granted.*

PEMBERTON, C. J., and DE WITT, J., concur.