[No. 10843. Department One. November 2, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Walter D. Peters, Plaintiff*, v. THE SUPERIOR COURT FOR KITSAP COUNTY, *Respondent.*[1]

ELECTIONS—NOMINATIONS—ACTIONS TO RESTRAIN AUDITOR—PARTIES PLAINTIFF. Under the express provisions of the primary election law, any citizen of the county may maintain an action to restrain the county auditor from illegally placing upon the general election ballot the names of candidates as nominees of a political party who had not been legally nominated by such party.

ELECTIONS—NOMINATIONS—CONVENTION— DEFINITION—MASS CONVENTION OUTSIDE COUNTY—LEGALITY. Under Rem. & Bal. Code, § 4794, defining a convention as an "organized assemblage of the electors or delegates representing a party or a principle," and Id., § 4830, requiring political parties which cast less than ten per cent at the last preceding election to nominate candidates at a convention, county nominees of the progressive party, which cast no votes at the last election, are not named at a "convention," and are therefore not entitled to have their names placed on the general election ballot, where it appears that in K. county, a party primary election was held in but seven out of the thirty-one voting precincts to elect one delegate in each precinct to a state convention which had been called for September 10th, and one delegate to a county convention, that no notice of a county convention was given, but that, during a recess at the state convention held in another county, the five delegates elected to the county convention, with 25 to 40 others present from K. county, meeting as a convention of assembled electors of K. county, nominated progressive party candidates for county offices, without any pretense of holding a county convention in obedience to the invitation to elect delegates at the party primary, the proceedings showing that a mass convention only was held; since such a popular or mass convention, held outside of the county without notice is not fairly representative, would open the door to fraud, and is contrary to the spirit of the direct primary law designed to give every opportunity to participate in the selection of party nominees.

ELECTIONS—NOMINATIONS—CANDIDATES OF TWO PARTIES—VACANCIES—POWER TO DECLARE OR FILL. Under the primary law requiring a person nominated for an office by two parties to designate the ticket upon which he desires his name to appear, the right to be-

[1]Reported in 127 Pac. 310.

come a candidate of two or more parties is a valuable right, and the central committee of a political party authorized to fill vacancies has no power to declare a vacancy where the lawful nominee of two parties, in declining to be a candidate under both tickets, did not decline the nomination in writing in the manner required by Rem. & Bal. Code, § 4802.

Certiorari to review a judgment of the superior court for Kitsap county, Kauffman, J., entered October 25, 1912, in favor of the plaintiff, upon stipulated facts, in an action to enjoin the placing of names of nominees on the general election ballot. Affirmed.

*J. W. Bryan* and *Jas. W. Carr,* for relator.

*F. W. Moore,* for respondent.

CHADWICK, J.—A party primary was held by the adherents of the new Progressive party of this state on September 7. The party, being in the formative period and having cast no votes at the last election, could not participate in the general primary to be held on September 10, but was put to the stress of holding conventions in order to make its nominations legal. A general ballot was prepared and circulated in Kitsap county. The party primary was held in but seven precincts out of the thirty-one voting precincts in the county. The record shows that there are approximately five thousand voters in Kitsap county. The ballot provided a form for the selection of delegates:

Delegate to State Convention.          (Write One Name.)

{ Delegate to County Convention.          (Write One Name.)
    Who will also be your precinct
    committeeman for the coming year.

The party primary was abortive. It is conceded that only five delegates were selected, and that no more than seventy votes were cast. No provision or notice was made or given for the place of holding a county convention, although it was published on August 30th that the "Progressives of Kitsap county formed a permanent organization Tuesday

evening [August 27th] and unanimously decided to have a county ticket in the field." At the state convention in Seattle, King county, and during a recess in its proceedings, those present from Kitsap county as delegates (and so far as the record shows the greater part of them were voluntary delegates), and possibly others, to the number of "25 or 40," organized what is now called the regular county convention for Kitsap county. Although it is suggested that the presence of a number or all of the five delegates elected as delegates to a county convention gives a leaven of regularity to the proceeding, the record of the convention, as certified by its officers, would indicate that there was no pretense or intention of holding a convention in obedience to the invitation to elect delegates at the party primary, for that effort had palpably failed to record any appreciable manifestation of the public will. We take it that those in charge intended, and that the law must of necessity regard the assemblage, as it is now practically admitted that it was, a mass convention. We shall quote enough of the minutes of that body to make clear the ideas and plans of those in charge:

"This is to certify that, on the 10th day of September, 1912, a convention of assembled electors of Kitsap county, Washington, held a meeting in which was organized the progressive party of Kitsap county, Washington.

"That at the meeting of said electors, the following order of business was had:

"First, Gustav F. Rust, residing at Colby, Washington, was nominated and elected as chairman of the convention and Howard M. Rice, residing at Rolling Bay, Washington, was nominated and elected secretary of the convention.

"That after the nomination and election of the chairman and secretary of said convention, the convention proceeded to nominate a ticket for county officers for said party. That the following officers were then nominated on the progressive ticket for the following hereinafter named offices, to wit: (Here follows the names of the nominees.) . . . . . .

"On motion, properly made and carried, the county committee were authorized to fill any vacancies which might oc-

cur in the ballot hereinbefore nominated. It was ordered that a meeting of the precinct committeemen elected in the primary on September 7th, be held at the court house at Port Orchard, Kitsap county, Washington, on Saturday, September 21st, and that said committee have power to fill all vacancies and prepare a certificate for the county auditor of the nominations made at this convention and at the said committee meeting.

"The said committee was especially authorized to substitute new names for any persons who may decline to accept the nomination and run on the progressive ticket."

The nominees were selected from the names of those who had theretofore filed as members of the republican party, but who were known or believed to be in sympathy with the progressive movement. The men so selected were being voted on in the regular primaries held under the direct primary law in Kitsap county, on the same day and at the same time that they were selected by the progressives assembled at the state convention in Seattle. With two exceptions, W. A. McLeod, the candidate for county attorney, and John T. Anderson, the nominee for county clerk, all those nominated at the Seattle meeting were selected in the republican primaries. On September 21, the county committee met, eight persons being according to the minutes duly accredited, and these having provided for the selection of committeemen from all the precincts in the county, a committee was appointed to wait upon Mr. McLeod to ascertain his intentions. He having asserted his unwillingness to run as a candidate of another party after having submitted himself as a candidate in the republican party primaries, the name of W. D. Peters was proposed and selected by the committee as a candidate for prosecuting attorney. The records of the committee go no further, although it appears in the statement of fact that the executive committee, or a part of it, thereafter nominated one Leonard Wager for county clerk and Roland Hughes for county auditor. The county auditor being about to put the names of these three nominees on the progressive county

ticket, an action was brought to restrain him and a permanent injunction was granted.

The questions that present themselves are as follows: Can a citizen or a candidate of another party, having no interest in the progressive ticket, maintain an action such as was brought in this case? It is unnecessary to discuss this point. As stated in the case of *State ex rel. Reynolds v. Howell, ante* p. 467, 126 Pac. 954, the right to maintain an action is secured to every citizen by the express provisions of the primary law. Indeed, there are cases going so far as to hold that it is a right inherent in citizenship, and it was upon this broad principle that the case of *State ex rel. Harvey v. Mason,* 45 Wash. 234, 88 Pac. 126, was made to rest.

The next question is—and it is probably decisive of the whole case—Was the convention held in Seattle, King county, a county convention for Kitsap county, within the meaning of the primary law, Rem. & Bal. Code, §§ 4794 and 4830? We are quite clear that the so-called convention was not such an assemblage. A convention is there defined as an "organized assemblage of the electors or delegates representing a party or a principle." The law provides that nominations so made by a convention shall be certified and filed with the clerk of the board of county commissioners of the respective counties wherein the officers are to be elected. Rem. & Bal. Code, § 4795. There is nothing in the act to indicate an intention to allow a convention to be held outside of the county. It may be that delegates, regularly elected and fairly representative of the whole county, might for convenience meet outside of their county and there transact their business. That question is not before us; but the public has an interest in popular or mass conventions, and if they could be held outside of the county and without notice and there make nominations for county officers, it would open the door to those frauds and abuses which the primary law was designed to circumvent and destroy. Our attention has been directed to several cases holding that some

notice of the time and place of holding a convention should
be given in order to insure its regularity, but we find no
positive provision in our statutes calling for such notice;
nor do we now hold that a notice would be necessary, for this
case does not depend upon a solution of that problem. But
the fact remains that a convention under our law must be
fairly representative; that is, made up of delegates duly
elected; or if a mass convention, it must be held at a time
and place where citizens so inclined will have the opportunity
to assemble and participate.

"Somewhat recently, in the growth of electoral reform,
legislation has come to recognize the existence of political
party conventions; and the statutes of many states, includ-
ing those of Montana, have briefly put in definite form the
rule that a convention is an organized assemblage of electors
or delegates representing a political party or principle.
This definition cannot be separated into wholly independent,
divisible parts. The assemblage must not only be an organ-
ized one, but the electors as well must, when so organized,
represent a political party or principle. Thus a convention
must be a representative body. Now, if we are right in this
reasoning, this representation is of electors of the party to
whom the candidates of the convention are to be submitted
for election to office. And this representation must be what
the statute implies,—a gathering of electors springing from
the electors who compose a political party or adhere to a
political principle. If such electors fail or decline to send
delegates to the convention, or if the delegates sent disagree
or act unwisely, then other matters may arise; but there can
be no representation without the presence of electors fairly
representing the party, or without some opportunity having
been given to the electors to say whether or not they desire
their party or principle to be represented. . . . The
whole theory of representation, as fairly intended by the law,
was entirely ignored. The vigorous authority of the electors
of the party was lacking, and, unless relief is granted in
such cases, the voters of the state who are members of an
existing political party, may be confronted with a ballot
containing the names of persons in whose nomination they
had no opportunity whatever to take part by delegate rep-

resentation.   We cannot assent to such a method as a convention nomination of candidates.   A political convention is to a certain extent a law unto itself, and the right to assemble in convention is one that must be always upheld, but whether there has been a convention with authority to nominate candidates is, under conditions of fact, one that must be determined by applying the statute law of the state.   The duty of the court, therefore, in this case is to subject the methods employed to form a convention to such examination as any other case properly presented to a court would be. We have done so, and our conclusion is that there was no state convention held, and the writ must issue as prayed for." *State ex rel. Metcalf v. Johnson,* 18 Mont. 548, 46 Pac. 533, 34 L. R. A. 313.

Taking into consideration the place of holding the present assemblage, we are unwilling to hold that the convention was fairly representative.   We do not question the sincerity of those participating in the meeting held at Seattle, and it may be that in this case no harm would come of it; but to sustain the act although innocuous, would compel the statement of a rule that would make it possible for evilly disposed or designing persons to assemble in limited numbers in an out-of-the-way place, or out of a county or city, and usurp the name of a party or the cloak of a principle, and thus defeat the will of a great majority of those attached to the party or in sympathy with its principles.   It is not so much what was done in this case, as what might be done if we hold the Seattle meeting was a regular county convention.

Furthermore, it is the spirit of the direct primary law that every opportunity be given to participate in the selection of party nominees.   That part of it calling for conventions is equally potent to protect the citizen in this right.   It is likewise against the policy of the law to allow a new party to organize, or to continue after organization, without affording opportunity to sympathetic citizens to participate in its movements and deliberations.   Therefore, if notice in its strict sense be not required, there should be such a showing of facts

as to imply notice or opportunity. The republican convention of 1856, the recent progressive state convention, and the convention parliaments of 1399, 1660 and 1689, were of the latter class; but it could not be held that the three tailors of Tooley Street met in convention, although their declarations were equally vehement. Our law is framed to protect parties from the dangers of secret manipulation and to prevent control by factions; for, although parties may die and principles languish, human nature remains about the same; methods may change, but impulses do not. We find, therefore, nothing in the spirit or letter of the election laws to sustain a voluntary assemblage of a few of the citizens of Kitsap county held in another county of the state.

If the character of a mass convention be attributed to the so-called central committee meeting, which is extremely doubtful (*State ex rel. Russell v. Tooker*, 18 Mont. 540, 46 Pac. 530, 34 L. R. A. 315), its endeavor to nominate under the guise of filling vacancies was unwarranted. It was not held on September 10, the time fixed by law, which is in itself an implied invitation to all interested to be present; and further, although power to fill vacancies be granted to its executive committee, that committee could not *declare* vacancies. This may be illustrated by the case of Gordon. Gordon was a candidate at the regular primaries and received the republican nomination. He was likewise nominated at the Seattle meeting. Now, if it be granted that the Seattle meeting was a regular convention, Gordon was the lawful nominee of the two parties. The only condition put upon him by the law of the state is that he designate the ticket upon which he desires his name to appear. Opinion of the Attorney General, No. 245; *State ex rel, Sheppard v. Superior Court*, 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925. The record shows that, on the afternoon of the last day for filing nominations, two of the executive committee called upon Mr. Gordon and asked him whether he intended to be a candidate on the progressive ticket. He replied that he did not; that

he would run on the republican ticket. Whereupon those making the inquiry offered for filing a nomination of Roland Hughes. Manifestly, the right which the law gives a person to be the nominee of two parties is a valuable right, and it cannot be taken away by any one or in any manner other than as provided in the code. Rem. & Bal. Code, § 4802.

The nominations of the three persons, Wager, Peters and Hughes, are without legal effect, for the reason that no convention within the meaning of the law was ever held. The nomination of Roland Hughes for county auditor is without legal effect for the further reason that, although the Seattle meeting be credited with the dignity of a party convention, neither the central committee nor the executive committee had power under the law to declare a vacancy for the purpose of offering the nomination of another person.

The judgment of the lower court is affirmed.

MOUNT, C. J., GOSE, CROW, and PARKER, JJ., concur.