THE STATE ex rel. WILLIAM J. PREISS et al. v.
WILLIAM SEIBEL, Clerk of County Court.

In Banc, December 6, 1922.

1. **PLEADING**: Denial by Pages.  The answer to respondent's return in mandamus, denying allegations on certain pages thereof, amounts to nothing, is neither a special nor a general denial, and is insufficient to raise any issue.

2. **ELECTIONS**: Nominations By Petition: Number of Signers: Finding of County Clerk.  Under the statutes where, within three days after the filing in the office of the county clerk of certificates of nominations signed by less than one thousand electors, objections are filed by qualified voters objecting and protesting that said certificates are not signed, by electors resident within the respective districts or political divisions within which the respective candidates are presented for nomination, to a number equal to one per cent of the entire vote cast at the last preceding election in such district or division, and upon due notice to the candidates hearings are held and it is accordingly found by the county clerk that said certificates are not signed by said requisite number, his finding is final, unless an order in the matter is made by the Supreme Court, the circuit court, or judge of such court in vacation.  And where, in his return to the writ of mandamus to the county clerk to show cause why the names of the candidates attempted to be nominated by said certificates should not be printed on the official ballot, he alleges such objections were filed in his office, that notice was duly given, a hearing had and such finding was made by him, and such averments are not denied by relators or in any wise called in question, his finding will not be disturbed and the writ will be discharged.

3. ———: New Party: Nominations by Committee.  A certificate of nomination of candidates of a political party organized since the last general primary, made by the chairman and secretary of its committee, is deemed to be valid unless objection in writing is made thereto within three days after it is filed; but if such objections are timely filed, the burden is on the nominees to prove that they were nominated by the committee of a political party as alleged in the petition.  After such objections are timely filed, the certificates are not prima-facie proof of their recitals that the party named is a political party, or that the committee was duly constituted, or that the nominations were made.

4. ———: **Political Party: Committee Nominations.** To be a political party authorized, through its chosen committee, to certify nominations to be printed on an official ballot at a general election, it must be composed of electors who have distinctive aims and are united in opposition to other bodies of electors. Where the candidates named by a committee in its certificates of nomination were selected from nominees of the two dominant political parties, and there is no suggestion that it has adopted a platform of political principles in opposition to the creed or policies of any recognized party, it cannot be said to be a political party, and the attempted nominations of its committee are not in accordance with the provision of the statute that "no central committee shall have power to substitute, to fill any vacancy, the name of any person who is not known to be of the same political belief and party as the person for whom he is substituted."

## Mandamus.

PRELIMINARY RULE DISCHARGED.

*Judson, Green & Henry* for petitioners.

(1) The petitions of electors resident within the county, district or political division, for which the respective candidates are presented for nomination, containing the signatures of one per-cent of the entire vote cast at the last preceding election in said county, district or political division, to a number not more than 1,000 nor less than fifty for each candidate, said signers declaring in said certificate that they had not aided and would not aid in the nomination of any other candidate for the same office, and giving the name, residence and occupation of the candidates and the office for which they are nominated, respectively, and the name and residence of each signer, and selecting a party name which is no part of any name in use by any other political party, and containing but one name of a candidate for each office, was in substantial compliance with the law. Secs. 4802, 4803, 4810, 4811, 4812, 4813, R. S. 1919; Atkeson v. Lay, 115 Mo. 551. (2) The certificate of nomination filed by the county central committee of the

Clean Elections Party, which said party was not organized until after the primary of August 1, 1922, signed by its chairman and secretary, and executed with the formalities prescribed for the execution of an instrument affecting real estate, said certificate giving the name of each person nominated, his residence, occupation and the office for which he is nominated, and designating the name of the party which said nominee should represent, which said name was no part oı any name in use by any other political party, was in substantial compliance with the law and should have been duly filed by the County Clerk. Secs. 4802, 4803, 4815, 4838, R. S. 1919. Atkeson v. Lay, 115 Mo. 551; State ex rel. v. Kortjohn, 246 Mo. 34; Nance v. Kearbey, 251 Mo. 374. (3) The fact that some of the candidates nominated by the petition and certificate of the county central committee by the petitions and by the certificate of nomination had already been nominated by the Democratic and Republican parties did not authorize the county clerk to reject them as candidates of the Clean Elections Party, the anti-fusion provisions of the 1913 ballot law being omitted in the 1921 law which repealed the 1913 laws. Sec. 4816, R. S. 1919; State ex rel. v. Seibel, 262 Mo. 220; Laws 1921, p. 308; 20 Cyc. 125-126; Matter of O'Brien, 152 App. Div. (N. Y.) 856; Pease v. Wilkins, 53 Colo. 404; DeFoe v. Bay City Election Comm'rs., 174 Mich. 472. (4) The certificate of nomination, being of a new party organized after the primary of August 1, 1922, was a valid mode of nomination, and such certificate should have been filed by the county clerk and the nomination ordered printed upon the official ballot. Sec. 4816, R. S. 1919; State ex rel. v. Kortjohn, 246 Mo. 34; Nance v. Kearbey, 261 Mo. 374. (5) The clerk of the county court, being a ministerial officer, had only the right to see that the petitions were in apparent conformity with the statutes, and could not pass upon the legal qualifications either of the signers or the candidates. State v. Leseuer, 103 Mo. 263; State

295 Mo.—39

v. Roach, 246 Mo. 67, 71; State v. Roach, 230 Mo. 449; State v. Roach, 190 S. W. 277. (6.) The petitioners declared they were qualified and their signatures acknowledged according to law, the petitions being admitted in evidence without objection. The same being in conformity with the law, the county clerk could not go further and determine their qualifications, certainly where no evidence is offered as to their disqualifications. State v. Leseuer, 103 Mo. 253; State v. Roach, 246 Mo. 56, 67; State v. Roach, 230 Mo. 449; State v. Roach, 190 S. W. 277. It was the duty of the objectors to offer evidence showing why the signers were not qualified voters in order that petitioners, might know what evidence was necessary to meet the objections. Douglass Nom., 9 Pa. Dist. 187; Ludens Papers, 22 Pa. 312; Brown's Nom. Papers, 237 Pa. 570. The issues are made up on the return to the alternative writ. State v. Lafayette Co. Ct., 41 Mo. 559; State v. Railway, 114 Mo. 289.

*Jos. C. McAtee* for respondent.

HIGBEE, J.—On October 17, 1922, the petitioners filed in this court a petition for a writ of mandamus to require the respondent, Clerk of the County Court of St. Louis County, to print the names of petitioners and others upon the official ballot at the ensuing election to be held in said county on November 7th, as candidates of the Clean Elections Party. An alternative writ was issued as prayed, returnable *instanter*.

Omitting formal parts reciting the places of residence and qualifications of the petitioners and of the several candidates, the petition avers:

"Petitioners state that William Seibel is the Clerk of the County Court of St. Louis County, Missouri, duly qualified and acting as such clerk; that petitioners herein are the nominees of the Clean Elections Party, a political party organized in St. Louis County since August

1, 1922, said party having many members who are qualified voters of St. Louis County and the State of Missouri, and many more sympathizers; that said party was not organized in time to participate in the August Primary of 1922; that said party has a duly elected and qualified county central committee of ten members, two members being selected from each township in said county, and all of said county central committee being residents and qualified voters of St. Louis County, Missouri; that said committee met and organized at Clayton, Missouri, on the 23rd day of September, 1922, selecting Mr. John J. Rowe as chairman, Mrs. J. Hal Lynch as secretary, and Mr. Alexander Campbell as treasurer, and that said officers are now acting as such on said county central committee, and that said treasurer has given adequate bond as such treasurer.

"Petitioners further state that on the 6th day of October, 1922, and within not more than sixty days and not less than fifteen days before the day fixed by law for the regular election at which the offices hereinafter mentioned shall be voted upon, namely, November 7th, 1922, these petitioners presented to respondent, William Seibel, Clerk of the County Court of St. Louis County, the several petitions for nominations for offices in St. Louis County and mentioned herein, and set out in copies of said nominating petitions filed herewith, made part hereof, and marked Petitioners' Exhibits A, B, C, D; that petitions the same in substance as Exhibit B were filed for Emil A. Westerman, Justice of the Peace Bonhomme Township, for the city of Kirkwood; for Otto Mayer, Justice of the Peace Bonhomme Township; Henry O'Neil, Constable Bonhomme Township; William F. Knight, Justice of the Peace Carondalet Township; Jacob Pfeffer, Justice of the Peace Carondalet Township, and Henry Sharp, Constable Carondalet Township, and designating petitioners here and John W. McElhinney, Gustavus A. Wurdeman, William E. Knight, Sam D. Hodgdon, Arthur W. Schmid, John C.

Steffen, Attillius A. Ladd and Jacob Pfeiffer as the candidates for the respective offices in said petitions set out, and choosing 'Clean Elections Party' as the name of the party said candidates should represent, said petitions, of which Exhibit A is a copy, bearing the signatures of more than 900 electors, and petitions of which Exhibits B, C and D are copies bearing about 250 signatures, all of whom are now and at the time of signing same were qualified voters and residents of St. Louis County, Missouri, and of the township, district or political division wherein the respective nominations were made, and said signers for each candidate aggregating in number more than one per cent of the entire vote cast as the last preceding election in said county, township, district or subdivision for the election of the respective offices for which said petitioners were nominated, the number of signatures on each petition being more than fifty and not over 1000; and that all said signers declared in said petitions that they were and are bona-fide supporters of the candidates sought to be nominated, and that they had not aided and would not aid in the nomination of any other candidates for the same office; that said certificates contain the names of the candidates, their residences, occupations and the offices for which they were nominated, respectively, and also, the name and residence of each signer thereof; said certificates, each and all, having been duly executed by each of said signers with all the formalities prescribed for the execution of an instrument affecting real estate before a duly commissioned notary public of St. Louis County, and were each sworn as to the truth of the facts stated in said petition.

"Petitioners further state that the name 'Clean Elections Party' is not any portion of the name of any political party now existing in the State of Missouri or St. Louis County, and that said certificate of nomination does not contain the names of more than one candidate for each office to be filled.

"Petitioners further state that the Clean Elections Party was organized as aforesaid after August 1, 1922; duly elected a county central committee as above set out to act for said party until the next regular election as its committee; that said committee, at a regular meeting thereof held in Clayton, St. Louis County, Missouri, on October 6, 1922, duly nominated candidates for offices in St. Louis County, as shown in the copy of certificate of nomination filed herewith and made part hereof and marked Petitioners' Exhibit E, the original of which was filed with William Seibel, Clerk of the County Court of St. Louis County, for the Clean Elections Party for the respective offices set out in said certificate of nomination, and that the majority of the whole committee-elect was present at said meeting and a majority of said committee voted favorably for the nomination of the parties to the offices for which they were nominated; that John J. Rowe, chairman, and Mrs. J. Hal Lynch, secretary, in their respective official capacities duly certified in writing the certificates of nomination of these petitioners and John W. McElhinney, Gustavus A. Wurdeman, Sam D. Hodgdon, Arthur W. Schmid, John C. Steffen, Attillius A. Ladd, Jacob Pfeiffer and William F. Knight as the candidates duly nominated by said committee as the candidates of the Clean Elections Party in and for St. Louis County, Missouri, and in and for the township, district and other political subdivision for which they were nominated, as more specifically set out in said certificate of nomination, said candidates to be voted for at the regular election to be held on November 7, 1922, the said certificate of nomination by said committee having been executed by said John J. Rowe and Mrs. J. Hal Lynch before a duly commissioned notary public of the County of St. Louis, Missouri, with all the formalities prescribed for the execution of an instrument affecting real estate, said certificate containing the names of these petitioners and John W. McElhinney, Gustavus A. Wurdeman, Sam D. Hodgdon, Arthur W.

Schmid, John C. Steffen, Attillius A. Ladd, Jacob Pfeiffer and William F. Knight, their residences, their occupations and the offices for which they were nominated by said committee, and also the residences of the chairman and secretary of said committee; that on the 13th day of October, 1922, these petitioners and each of them paid to the treasurer of the county central committee of the Clean Elections Party the statutory fees for candidates, as prescribed in Section 4828, Revised Statutes 1919, taking receipts therefor; that on the 13th day of October, 1922, petitioners presented to respondent, William Seibel, as Clerk of the County Court of St. Louis County, Missouri, the said certificate of nomination by said committee with the said receipts of the treasurer of said committee, demanding that the names of these petitioners be ordered printed on the official ballot to be voted on at the election to be held on November 7, 1922, as the candidates of the Clean Election Party for the offices aforesaid.

"Petitioners further state that notwithstanding the filing of said petitions for nomination and said certificate of nomination as aforesaid and notwithstanding his duty under the law to file said petitions and certificate of nomination, and to order the names of the candidates for the offices mentioned in said petitions and certificate of nomination printed on the official ballot for the ensuing election to be held on November 7, 1922, said William Seibel, as Clerk of the County Court of St. Louis County, Missouri, refused to advise petitioners whether he would file the said nominations and order the name of said candidates printed on the different ballots for the election of November 7, 1922, and stating that he would refer said matter to his attorney, A. H. Kiskadden; that said Kiskadden took the matter under advisement and still has the same under advisement; that when asked on Monday, October 16, 1922, by petitioners' attorney, what his decision was, he refused to give an answer; that although said original petitions have

been on file since the 6th of October, and said certificate of nomination since the 11th of October, said William Seibel has refused and still refuses to give any answer as to whether said candidates' names would be filed and ordered printed, as required by law; that said refusal is wrongful and without warrant or authority of law and in violation of the provisions of Articles IV and V of the Revised Statutes of Missouri of 1919, and in violation of Article II, Section I, of the Constitution of Missouri, providing that all political power is vested in and derived from the people, and that all government of right originates from the people and is founded upon their will only, and is instituted solely for the good of the whole; and in violation of Section 9 of Article II of the Constitution of Missouri, providing that all elections shall be free and open, and that no power, civil or military, shall interfere to prevent the free exercise of the rights of suffrage, and in further violation of Section 2 of Article VIII of the Constitution of Missouri providing for the qualifications of electors.

"Petitioners further state that the question involved is of wide-spread interest in St. Louis County, Missouri, and affects the rights and privileges of many thousands of legally qualified voters resident in said county affiliated with said Clean Elections Party; that petitioners have no adequate remedy at law and that an application to the Circuit Court of St. Louis County, a court of concurrent jurisdiction in mandamus, is wholly inadequate for the reason that if petitioners were successful in mandamus or other proceedings in said circuit court an appeal by said county clerk with bond would operate as a supersedeas, and said appeal could not be determined in time to have petitioners' names printed upon the ballot for the election of November 7, 1922; that Section 4819, Revised Statutes 1919, requires the clerk of the county court to publish the names of candidates for election at least seven days before said election; that the last day for publication in accordance with that statute is October 31, 1922.

"Petitioners further state this application could not have been sooner presented to this Honorable Court for the reason that the Clean Elections Party, having been organized since August 1, 1922, has been diligently engaged in the selection of candidates, the organization of its county central committee, in the procuring of the necessary number of electors to the nominating petitions and other labors, and have filed this application as promptly as the circumstances of the situation would permit.

"Wherefore, your petitioners herein, William J. Preiss, Willis W. Benson, Adolph C. Helmering, Adam Henry Jones, Edward Tiffin, Wilfred Jones, Milicene T. Smith, Edward E. Williams, John Robert Goericke, Emil A. Westerman, Otto Mayer, Henry O'Neil, Richard Surkamp, Charles F. Leonard, J. O'Neal Block and William Sharp, and all candidates nominated as above, state that they and each of them are remediless in the premises by or through the ordinary process on proceedings at law, and that they will suffer irreparable damage which cannot be adequately compensated at law, and wherein the necessary delay alone would deny them any remedy whatsoever, unless relief is granted by this Honorable Court, and they therefore pray this Honorable Court to award them, against William Seibel, Clerk of the County Court of St. Louis County, Missouri, a writ of mandamus commanding said William Seibel, Clerk of the County Court of St. Louis County, Missouri, to forthwith file the aforesaid petitions of nomination signed by more than one per cent of the voters as above set out, and said certificate of nomination signed by said officers of the county central committee of the Clean Elections Party, and to forthwith order the names of these candidates of the Clean Elections Party mentioned in said petition and certificate, including these petitioners and John W. McElhinney, Gustavus A. Wurdeman, William F. Knight, Sam D. Hodgdon, Arthur W. Schmid, John C. Steffen, Attillius A. Ladd and Jacob Pfeiffer,

placed and printed upon the official ballot as the can-
didates of the Clean Elections Party for the offices for
which they are nominated as aforesaid, and petitioners
further pray that the five days' notice provided for in
Rule 33 of this Honorable Court be shortened as in said
rule contemplated, because of the urgency of the ap-
plication and need for prompt action to afford the rem-
edy sought herein, and your petitioners further pray
for such other process, orders and remedies as may to
the court seem meet and proper.''

The respondent's return specially denies all the al-
legations of the alternative writ except the allegation as
to the residence and qualifications of the petitioners and
that respondent is clerk of the county court. It further
states, in substance, that certain papers were filed in his
office October 5, 1922, alleged to be certificates of nom-
ination of the Clean Elections Party of electors and can-
didates for county offices in St. Louis County, setting out
a copy thereof; that on October 7, objections were filed
with respondent against said alleged nominations, ''up-
on the ground that the certificates did not name or des-
ignate the county, township or district or political di-
vision in which said candidates were to serve, did not
state the residence and qualifications of said candidates
and state that they would qualify if elected; alleged
that many of said certificates purported to name per-
sons as candidates for offices unknown to the law and
to offices not provided for by law; that there were on
all of said certificates names of persons who were not
qualified electors of St. Louis County or qualified voters
in the several townships and districts in which they pur-
ported to reside; that many persons who signed said
certificates had aided in the nomination of other can-
didates for the same office; that the county clerk was
without authority to receive or pass upon the alleged
certificates of nomination for judges of the circuit court
in and for and of said county; that the electors exceeded
their power and authority by attempting to nominate

the judges of the circuit court by division; that misrepresentation had been made; that the Clean Election League was not a political party; that the certificates were not signed by electors resident of the county within the district or political division for which said candidates were presented to a number equal to one per cent of the entire vote cast at the election held in St. Louis County in November, 1920; that the alleged certificates of nomination unlawfully attempted to group candidates on two tickets.

"That thereafter on, to-wit, October 8, 1922, respondent notified the various several parties named as candidates in said purported certificates of nomination by mail, accompanied with a copy of the objections addressed to them at their respective places of residence as given in said alleged certificates of nomination, informing them that said objections would be heard at two p. m. on October 11, 1922, at his office at Clayton, Missouri, and that at said time and place the petitioners and objectors appeared by counsel and said objections were considered and evidence heard on that day and the further hearing continued to October 13, 1922; that on said 13th day of October, 1922, there was a further hearing and upon completion thereof respondent reserved his decision for further consideration of the law and the facts; that thereafter he sought an opinion from J. C. Kiskaddon, Esq., Assistant Prosecuting Attorney of St. Louis County and a representative of the prosecuting attorney's office in advising the county court; that he received such opinion, and that thereafter on to-wit, the 17th day of October, 1922, he rendered his decision therein, finding (among other things set out in the return) that as to all nominations, less than one per cent of the signers in the county and in each political subdivision of the county have complied with the law in signing and acknowledging their signatures. Respondent therefore decided that the qualified signers of all said certificates constituted less than one per cent of the

total number of votes cast at the last preceding election in the judicial circuit and in the county and in the representative districts and in the county court judicial districts and in the townships, and that said alleged nominees were not entitled to be placed on the official ballot to be voted at the general election on November 7th next.   .   .   .

"Respondent further states that thereafter on October 13, 1922, there was filed in his office a paper purporting to be a 'certificate of County Central Committee of Clean Elections Party designating and appointing candidates for county officers pursuant to Sections 4815 and 4838, Revised Statutes of Missouri, 1919,' in which it was alleged that a regular meeting of the Clean Elections Party of St. Louis County, Missouri, held October 6, 1922, at Clayton, St. Louis County, Missouri, a resolution was adopted reciting the organization of the Clean Elections Party after August 1, 1922; that by reason thereof no party offered himself as a candidate before such primary representing such party, and that said party desired to place in nomination parties for certain offices in St. Louis County thereafter set forth, and that the committee proceed to designate and appoint as candidates of the Clean Elections Party for the several county offices in said county to be filled at the ensuing general election to be held on November 7, 1922, the names of persons set opposite the offices to which they were designated and appointed, and reciting that said candidates were citizens and residents of St. Louis County, and designating the following named parties as candidates:"

(Here follows a list of the candidates nominated, with their places of residence, being the same candidates sought to be nominated by petition, except that of Adam Henry Jones, candidate for prosecuting attorney).

"That thereafter, to-wit, on the 16th day of October, 1922, there was filed with him as County Clerk of St. Louis County, objections in protest against said alleged

nomination and petition for rejection of the same by certain electors of St. Louis County, in which it was set forth that the said purported certificate of nomination was not a nomination by any political party, any committee of a political party, and therefore void; that there had been heretofore filed certain certificates of nomination with respondent by electors signing themselves as members of the Clean Elections·Party and purporting to nominate said several candidates for the alleged offices therein set forth as candidates for said Clean Elections Party, and that if said party was valid and said nominations were valid then there had not been resignations filed therein, and if said committee was a valid committee then it had and has no power to nominate a ticket and could only function in the manner provided by law;  . , .  ˊ that the alleged Clean Elections Party was not a political party, and had no standing in law, and its title was a misnomer, and was conceived for the purpose of deceiving electors and for the purpose of causing electors to believe that neither the Republican nor Democratic party favor clean elections," etc., etc.

"That thereafter, to-wit, October 17, 1922, respondent notified the parties named therein as candidates of the filing of said objection by mailing to them copies thereof at the addresses given in said purported certificate of nomination, and notified them that he would hear the said objections of Thursday, October 19, 1922.

"Respondent further states that the application made herein was premature, and under and by virtue of Section 4817, Revised Statutes 1919, it became his duty upon the filing of objections to said alleged certificates of nomination within three days after the filing of said alleged certificates to hear the same and to give notice thereof by mail to all candidates that may be affected thereby, addressed at their respective place of residence as given in the certificate of nomination; that it then became his duty under and by virtue of said section and under and by virtue of the law as construed and

interpreted by this court to hear evidence and pass upon the validity of said objections, and that he became vested with discretion in passing upon and determining the issues therein recited and created; that notice of the intention to file this petition was served upon him on Monday, October 16, 1922, before he had passed upon said objections and on the same day that the objections were filed to the second purported certificate of nomination filed with him as hereinbefore referred to; that he gave notice to the parties named therein upon the filing of the second objections to the second purported certificate of nomination that he would have a hearing upon same at two p. m. of said day, but that at 9:30 p. m. on October 18, 1922, he received from this court, through its marshal, the alternative writ of mandamus herein issued commanding him to place said nominees upon the official ballot or show cause *instanter* why he should not do so, and that as a result thereof he was engaged on the 19th day of October, 1922, in preparing his return to said writ and did not have the time to hear said objections, and passed the same over for hearing until Saturday, October 21, 1922."

Various other objections to the certificates of nominations are pleaded in the return which, in the view we take of the case, need not be recited.

The answer to the return denies "each and every allegation on pages 3 and 4 of said return and the first six lines of page 5 thereof; and for further answer to said return petitioners also deny every allegation contained in pages 8 to 12 inclusive of said return."

On October 20, 1922, we appointed Hon. James Booth to take and report the testimony in this cause. His report shows that he met the parties at the time and place designated in our order. The nominating petitions, the certificate of nomination filed by John J. Rowe and Mrs. J. Hal Lynch, representing themselves as chairman and secretary respectively of the Clean Elections Committee, the opinion of J. C. Kiskaddon

to Mr. Seibel and his decision on the objections filed to the nominations, were offered in evidence, all of which accompany the report. This was all the evidence in the case.

I. It will not be necessary to consider all the questions raised by the pleadings in this case. A few of them will suffice. Article IV, Revised Statutes 1919, regulates the procedure for the nomination of candidates for public offices to be filled by election within the State. Such nominations may be made by a primary election, or by electors. [Sec. 4802.]

Section 4811 reads: "The certificate of nomination of a candidate selected otherwise than by a primary shall be signed by electors resident within the district, or political division for which the candidate is presented, to a number equal to one per cent of the entire vote cast at the last preceding election in the State, the county or other division or district for which the nomination is made: . *Provided,* that the number of signatures so required shall not exceed one thousand nor less than fifty; and *provided further,* that said signers shall declare in said certificates they are bona-fide supporters of the candidate sought to be nominated and have not aided and will not aid in the nomination of any other candidate for the same office."

Section 4815 reads, in part:

"Certificates of nomination herein directed to be filed with the clerk of the county court of each county shall be filed not more than sixty days and not less than fifteen days before election: *Provided,* that in case of any vacancy in said nomination, by resignation, death or otherwise, the central committee, or a convention called for that purpose, of the party on whose ticket such vacancy may occur, may select and certify to the Secretary of State, county clerk or board of election commissioners the name or names of candidates to fill such vacancy."

Section 4816 reads, in part:

''The central committee of a political party shall consist of the largest body elected for the purpose of representing and acting for the party in the interim between conventions of the party. That for the purpose of making nominations to fill vacancies on a ticket previously nominated a majority of all the members-elect of a central committee shall be necessary to take action.''

Section 4817 reads, in part:

''All certificates of nomination which are in apparent conformity with the provisions of Sections 4816 and 4817, shall be deemed to be valid unless objection thereto shall be duly made, in writing, within three days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination. Objections to use of party name may also be made and passed upon in the same manner as objections to certificates. The Secretary of State or the county clerk, as the case may be, with whom the original certificate was filed, shall in the first instance pass upon the validity of such objection and his decision shall be final, unless an order shall be made in the matter by the Supreme Court, or a circuit court, or by a judge of such court in vacation, before the date for the certification of the names of nominees by the Secretary of State to the county clerk, or before the time at which the county clerk is required by law to publish the names of nominees as certified to him. Such order may be made summarily upon application of any party interested, and upon such notice as the court or judge may require. The decision of the Secretary of State, county clerk, or the order of the court of judge thereof in vacation, shall be binding upon all county and municipal officers with whom certificates of nomination are filed. . . . The Secretary of State or county clerk may be compelled, by peremptory order or mandamus proceedings, to perform his duty in this regard.''

Section 4811 provides for the nomination of candidates for public offices otherwise than by a primary election. If electors resident within a district or political division of the State, to a number equal to one per cent of the entire vote cast at the last preceding election in the State, county or other political division, desire to nominate one or more candidates for public offices, to be filled by election, the right to nominate them and have their names printed on the ballots is guaranteed in the manner prescribed by this section of the statutes. The candidates so nominated may be those already nominated by one or more of the political parties, so that under this section electors may nominate candidates of the various political parties and have their names printed on the ballots. This authorizes electors to act independently of all political parties. In other words, a ticket so nominated would be a non-partisan or non-political ticket. The only restriction upon such nomination is that the electors signing a certificate of nomination must declare in the certificate that they are bona-fide supporters of the candidate sought to be nominated, and have not aided and will not aid in the nomination of any other candidate for the same office.

II. The answer to the respondent's return, denying all allegations on certain pages thereof, amounts to nothing; it is neither a general nor special denial, is insufficient and raises no issue. [Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 257; Brickell v. Williams, 180 Mo. App. 572, 576.]

*Pleading Denial.*

III. The respondent's return pleads, and it was in evidence without objection, that within three days after the filing of the certificates of nominations by the electors, objections were filed in respondent's office by qualified electors objecting and protesting, among other things, that the certificates were not signed by electors resident within the respective districts or political division within which

*Finality of Finding.*

the respective candidates were presented to a number equal to one per cent of the entire vote cast at the last preceding election in such political division, and, upon due notice to the candidates, hearings were held and it was accordingly so found by the respondent. At the hearing before our commissioner no evidence was offered, if indeed such evidence would have been competent, to overcome or impeach the respondent's findings. Under the averments of the petition, the proviso of Section 4811, Revised Statutes 1919, that the number of signatures required shall not exceed 1000, has no application. Under Section 4817, Revised Statutes 1919, it was the duty of the respondent to proceed, in accordance with the requirements thereof, to hear the objections and pass upon them. Had he failed to do so, he could have been "compelled by peremptory order or mandamus proceedings to perform his duty in this regard." According to the return and the evidence he performed that duty; he sustained numeorus objections to the certificates of nomination by the electors, including that above mentioned. The statute (Sec. 4817, R. S. 1919) ordains that his decision shall be final unless an order shall be made in the matter by the Supreme Court or a circuit court, or by a judge of such court in vacation, before the date for the certification of the names of the nominees by the Secretary of State to the county clerk, or before the time at which the county clerk is required by law to publish the names of nominees so certified to him. The relator has not in this proceeding questioned the integrity of the respondent's decision in the matter, or even referred to it. The remedy prescribed in the statute is exclusive.

In Carlisle v. Mo. Pac. Ry. Co., 168 Mo. 652, foot 656, we said: "When an act creates a new liability, or gives a right of action, and at the same time prescribes the means by which, or the court in which, the right is to be enforced, resort cannot be had to any other means, or court, than that prescribed."

295 Mo.—40

This is the general rule. [1 C. J. 989, sec. 102.] Hence we are constrained to hold, in accordance with the statute, that the decision of the respondent on the objections filed to the certificates of nomination by electors is final.

IV.  The petition states that the candidates (except the candidate for prosecuting attorney) were also nominated by the committee of the Clean Elections Party, a political party organized in St. Louis County after August 1, 1922, and that no candidates of said party offered themselves for public office at the primary election held in St. Louis County in August, 1922.  The certificate of nomination executed by the chairman and secretary of this committee was filed with the respondent on October 13, 1922.  On October 16th, objections were filed by electors of the county with the respondent.  Respondent promptly notified the candidates of the filing of the objections and set the matter for hearing on October 19th, but was served with a copy of the alternative writ in this case on the night of October 18th.  The return specifically denies all of the averments of the petition except the formal allegations.  Under Section 4817, Revised Statutes 1919, this certificate of nomination is deemed to be valid unless objections thereto shall be duly made in writing within three days after the filing of the same.  Objections having been seasonably filed, the burden was on the nominees to prove that they were nominated by the committee of a political party as alleged in the petition.  The only evidence offered was the certificate of nomination.

*Committee Nominations.*

Under the terms of the statute referred to, after the filing of objections in conformity with the statute, the certificate did not import a presumption of verity and was not prima-facie evidence of the truth of its recitals. The burden was on the relators to prove that the Clean Elections Party was a political party; that the committee was duly constituted and that it made the nomina-

tions, and other facts set forth in the certificate. This was not done.

V. It appears from the briefs of counsel and the oral arguments at the hearing of this cause that the candidates named by the committee were selected, in part at least, from the nominees of the two dominant political parties nominated at the August primary election in St. Louis County. There is no suggestion that the Clean Elections Party had adopted a platform of principles or proclaimed a creed in opposition to the tenets of any of the recognized political parties that had nominated their respective candidates. Section 4816, Revised Statutes 1919, provides: "That no central committee shall have the power to substitute, to fill any vacancy, the name of any person who is not known to be of the *same political belief and party* as the person for whom he is substituted."

Note 90 in 15 Cyc. 326, reads: "A political party authorized to certify nominations is a body of electors having distinctive aims and puropses, and united in opposition to other bodies of electors in the community within which it exists. [In re McKinley Citizens. Party, 6 Pa. Dist. 109.] An organization may have polled the prescribed number of votes cast at a preceding election to constitute the aggregation of voters a political party, but if it has adopted no platform and proclaimed no political creed in opposition to the well defined principles of any established political party, inviting the support of the community at large, and not a mere section or fragment of it, it cannot be deemed a political party, authorized to nominate candidates in the usual way, within the legislative intent. [In re Jefferies, 9 Pa. Dist. 663, 24 Pa. Co. Ct. 529.]"

Note 92, page 327, reads:

"The nomination of a county ticket and presidential electors by a so-called citizens' silver party convention is a nullity, where the contention was participated in

*Political Party.* (margin note)

by twenty-one electors of the county, who appeared in response to a personal invitation and after acting as a county convention then proceeded to hold a state convention, it appearing that no call for a state convention was ever given, or delegates elected to either convention, or notice published throughout the state or county of the gathering of the new party. [State v. Johnson, 18 Mont. 548, 46 Pac. 533, 34 R. L. A. 313, approving State v. Rotwitt, 18 Mont. 502, 46 Pac. 370.]

"*Place on the ballot.* A convention not called by officers having authority from a political party as previously organized is not entitled to have its ticket assigned to the position on the official ballot which would have been accorded to the ticket of that party regularly nominated in a convention called and organized by the proper officers. [Baker v. Board of Election Commrs., 110 Mich. 635, 68 N. W. 752.]"

In Kelso v. Cook, 110 N. E. (Ind.) 987, 994 (8), it is said: "A 'political party' is an association of voters believing in certain principles of government, formed to urge the adoption and execution of such principles in govermental affairs through officers of like beliefs. They have existed in some form under all systems of government where the people were accorded any political rights. They originated here with the adoption of the Federal Constitution in 1787. In a republican form of government they are a necessity."

In State ex rel. v. Kortjohn, 246 Mo. 34, 43, speaking of the organization of a new political party, GRAVES, J., said: "For such new organization there must be a starting point, and because the law makes no express provision for the starting point, it does not follow that the citizens believing in given principles cannot meet and organize in the old and accustomed ways, but when organized they must follow the regulations as prescribed by law."

It is obvious that the Clean Elections Party is not a political party as averred in the petition and the nomina-

tions under consideration were independent and non-political. Section 4815, Revised Statutes 1919, provides that in case any vacancy in the ticket nominated may occur by resignation, death or otherwise, the central committee of the party on whose ticket such vacancy may occur may select and certify to the Secretary of State, county clerk or board of election commissioners the name or names of candidates to fill such vacancies. The nominations not having been made by a committee of a political party, the certificate of nomination was not authorized by statute and was not entitled to be filed by the respondent.

But, aside from this feature of the case, the statute has provided an exclusive remedy for the trial and disposition of the issues raised by the objections filed with the respondent. That proceeding was frustrated by the issue of our alternative writ.

For the reasons indicated, the alternative writ should be quashed. It is so ordered. All concur except *James T. Blair, J.,* who dissents; *Graves, J.,* concurs in result.