STATE OF MISSOURI at the Relation of RALPH E. GIPE, Relator, v. EDGAR C. NELSON, Secretary of State of the State of Missouri, Respondent.—No. 41215.—213 S. W. (2d) 905.

Court en Banc, September 20, 1948.

*Emily Cronheim* and *Victor B. Harris* for relator.

*J. E. Taylor,* Attorney General, *Arthur M. O'Keefe* and *C. B. Burns, Jr.,* Assistant Attorneys General, for respondent.

[905] PER CURIAM—This is an original proceeding in mandamus. The parties have stipulated that if our alternative writ be granted, then the peremptory writ should follow as of course. We have ordered the writ and made it peremptory for the reasons hereinafter stated.

The issue involved is whether or not the Secretary of State shall certify to local election officials, as nominees of the Socialist party, the names of those who had filed as its candidates for state office

and Congress in time for the 1948 primary as required by Section 11550. (All statutory references are to R. S. 1939 and Mo. Stat. Ann. unless otherwise stated.) Relator is one of these candidates having filed for Governor. Respondent, in compliance with Section 11554, in May 1948, certified to the county clerks the names of these Socialist candidates and called attention to [906] Section 11561 which provides that no primary ballots shall be printed for any party which cast less than five per cent of the total vote for Governor at the last preceding election, when its candidates are unopposed. The petition herein states that the Socialist Party has existed in the United States and in Missouri since 1900 and has had candidates on every general election ballot since that time. It does not claim to have cast as much as three per cent of the entire vote of the state in any elections more recent than those of 1912 and 1924.

Respondent relies on Section 11528 and contends that the Socialist candidates are not entitled to go on the general election ballot of 1948 because that party did not cast three per cent of the entire vote of the state at the last preceding election. Relator contends that this section does not apply to a party that has ever cast three per cent in any election. However, our view is that it has no application whatever to the general primary *held by the State,* but applies only to a primary *held by a party.* This is clear from a consideration of the history of this section. It was enacted as a part of the Act of 1889 (Laws 1889, p. 105) which provided for printing of general election ballots at public expense and regulated the methods of nominating candidates to go on the official ballot. [The 1889 Act established the Australian Ballot system, of official ballots and secrecy in voting, in place of the old system of parties printing and distributing their own ballots. See Bowers v. Smith, 111 Mo. 45, 20 S. W. 101; Turner v. Drake, 71 Mo. 285; 28 C. J. S. 221, Sec. 149; 18 Am. Jur. 287, Sec. 163.] However, the 1889 Act authorized party primaries, conducted and operated solely by the party itself and that is the kind of a primary to which Section 11528 refers. This section, together with the rest of the 1889 Act regulating nominations by party and independent electors is now Article 4 of Chapter 76. Our Direct Primary Act (Laws 1907, p. 263; Laws 1909, p. 481) which provided for a primary *held by the State* is now Article 5 of the same chapter.

Under the 1889 Act, there were four authorized methods of making nominations to public office. Two of these were alternative methods available to political parties which had polled at least three per cent of the entire vote cast in the state or lesser division thereof in case of county or district offices. They were by a convention of delegates or a primary election *held by the political party* under direction of its governing committee. [See Sec.'s. 5833, 5836 and 5837, R. S. 1909, now Sec.'s. 11525 and 11528, the convention

method having been abolished, Laws 1919, p. 328.] A third method, authorized for a political party, was, in case of any vacancy, by death, resignation or otherwise, the central committee, or a convention called for that purpose, of the party, could select and certify to the Secretary of State (if state office was involved) the name or names of candidates to fill such vacancy. (Sec. 5847, R. S. 1909, now Sec. 11538.) The fourth method was by certificate of nomination signed by electors in a number equal to two per cent of the entire vote cast at the last preceding election in the state, or lesser subdivision if a state office was not involved. (Sec. 5843, R. S. 1909, reenacted Laws 1919, p. 328, Laws 1925, p. 214, now Sec. 11534.) This method allows voters to act independently of existing political parties. [See State ex rel. Preiss v. Seibel, 295 Mo. 607, 246 S. W. 288; State ex rel. Punch v. Kortjohn, 246 Mo. 34, 150 S. W. 1060.] In Atkeson v. Lay, 115 Mo. 538, 22 S. W. 481, we said: "The law makes no provision for the nomination of candidates by a political party of less strength than the required three per cent, or in any other manner than by a convention of delegates or a primary election and only candidates so nominated become the nominees of a political party and, as such entitled to go upon the ballot to be so voted for." That was the law prior to the enactment of the 1907 Primary Act.

This situation was completely changed by the Direct Primary Acts of 1907 and 1909, under which nominations for most offices (see Sec. 11546) were no longer permitted to be made by any methods determined, controlled or operated by political [907] parties, but were required to be made in a general primary election *held by the State*. The 1907 Act was more restricted than the present Act. Under it only county officers could file without obtaining voters petitions for their nominations. (Laws 1907, p. 264, Sec. 5.) Candidates for State or district offices were required to obtain signatures of voters aggregating at least one per cent of the party vote for state office, two per cent thereof for Congress and three per cent for other district offices. (Laws 1907, p. 265, Sec. 9.) Moreover, it was further provided (Laws 1907, p. 267, Sec. 10) that a party which had received *"one per cent* of the total vote cast at the last preceding general election" could "have a separate primary election ticket as a political party." Thus the old three per cent requirement for a party to make its own nominations in a primary, or convention, *held by the party* never had any application to the primary *held by the State* because an entirely new and different basis was adopted when the state primary was established. The 1909 Primary Act abolished even the modified restrictions of the 1907 Act and allowed any qualified elector to file for the nomination of any party, for any elective office under this Act, as a matter of right upon payment of the required fees. (Sec. 11551.) It did not continue

the 1907 requirement for a minimum vote of one per cent and substituted no other percentage requirement in its place.

Thus it is obvious that the Primary Act of 1909 (our present primary law) was not only based on an entirely different theory of making nominations from the 1889 Act, but it was also intended to allow completely free participation of minor political parties in all elections to which it applied. These Primary Acts abolished the convention method of nominating candidates (except presidential electors as authorized by Sec. 11583 from which the old three per cent requirement was likewise omitted); and while the primary *held by a party* (authorized by Section 11528) was retained, the situations in which it can now be used are very limited. [See Sec. 11546 for some of them.] Certainly the plain purpose of the 1909 Primary Act was to give a completely free and open opportunity to anyone who wanted to be a candidate for any office whether as the candidate of an existing political party or not. [See Sec's. 11552 and 11560 as to candidates who do not announce themselves as candidates of any political party.] The only requirement that can be found in that act, as to participation of any political party in the primary *held by the State,* is that some qualified persons should file as candidates for the nomination of the party.

■ However, Section 11561 (added in 1933; Laws 1933, p. 237) now provides as to candidates of a party, which did not cast five per cent of the vote for Governor at the last preceding election, that "when not more than one person shall have filed as a candidate for any office on such party ticket, no ballot shall be printed for the primary election" but such unopposed candidates "shall be certified" to go on the general election ballot as the nominees of the party. This was no doubt intended to prevent unnecessary expense of printing primary ballots for unopposed candidates of minor parties but it certainly does not indicate any intent to bar such parties from the general election ballot. [See also Sec. 11595 concerning preparation of the general election ballot.] On the contrary the clear intent of the 1909 Primary Act was to liberalize the methods of nominations, to place the power to make them completely within the control of the people and to give all candidates and all parties the right to compete for the people's favor. It must have been so intended because there was no provision in it (and even with Section 11561, there is still nothing in it) which continues the 1889 requirement that a party must have had three per cent of the vote, or even the one per cent required in 1907, to nominate candidates therein and get them on the general election ballot if they file proper and timely declarations in the primary *held by the State.*

■ The only remaining prohibition against any minor party is in Section 11528; that, as the history of this legislation demonstrates, is against nominating candidates by a primary *held by the party,* and

168

that method is not involved herein. Thus it [908] is no longer true as it was at the time we decided Atkeson v. Lay, supra, that the law makes no provision for the nomination of candidates by a political party of less strength than three per cent because our Primary Act now in effect does make such provision. Therefore, relator, who properly filed in the 1948 primary *held by the State*, should be certified to go on the general election ballot as the candidate of the Socialist Party.

It is ordered that our peremptory writ issue for that purpose.